CONSOLIDATED STORE–SERVICE CO. v. SIEGEL–COOPER CO. et al.

(Circuit Court, S. D. New York.    June 25, 1900.)

**1. Patents—Infringement—Store-Service Apparatus.**

The Osgood patent, No. 357,851, for an improvement in cash-car apparatus, the device described consisting of a car rigidly suspended by two wheel hangers from a horizontal wire, along which it is moved by a push of the hand, discloses patentable invention, was not anticipated, and is valid, although entitled to a narrow construction.    Claim 1, as so construed, is not infringed by a carrier having a single wheel, although it has underneath guides at either end to prevent oscillation, which is accomplished in the device of the patent by the second wheel; nor by a device in which the wire track is inclined so that the car runs thereon by gravity.

**2. Same—Invention—Buffer for Cash Car.**

The Osgood patent, No. 293,192, for an improvement in cash-car apparatus, claim 2, covers an arresting stop or spring buffer adapted to receive and hold the car, which, as described in the specification, consists merely of a forked wire or spring so placed that the car enters between the ends of the arms, and is arrested and held thereby; and is an obvious mechanical expedient destitute of invention.

In Equity.    Suit for infringement of patents.    On final hearing.

Frederick P. Fish, for complainant.
Albert H. Walker, for defendants.

SHIPMAN, Circuit Judge.    This bill in equity was brought to restrain the alleged infringement of claim 1 of letters patent No. 357,851, dated February 15, 1887, issued to Edwin P. Osgood, called hereinafter "Patent No. 1," and of claim 2 of letters patent No. 293,192, dated February 5, 1884, and issued to Byron A. Osgood and Edwin P. Osgood, and called hereinafter "Patent No. 2."    Each of these patents was for an improvement in cash-car apparatus used in sales rooms.    Patent No. 1 was for a single wire made taut at the ends without intermediate supports, and practically horizontal, with a car suspended beneath the wire upon two wheels running on the wire, one behind the other, by means of hangers, which form a frame for the wheels.    The two wheels prevent oscillation, and, as the car is fixed to the hangers, it moves as a rigid body, and regularity of movement is preserved.    The car is pushed in either direction between the sale station and the cashier's desk by a single impulse given by the hand.

Claim 1 is as follows:

"In a cash-car apparatus, a wire stretched horizontally between fixed supports at each end, and in the described relation to the cashier's desk, in combination with a freely moving car held below the wire on wheel hangers, to which it is rigidly connected, the wheels thereof being fitted to run one behind the other on the wire, whereby the car is held rigidly against oscillation longitudinally of the way; the whole moving structure being thus adapted to be impelled as a solid body from one end of the way to the other in either direction by the momentum imparted by a single impulse or push, substantially as described."

The system was a decided improvement upon previous devices.    It was a single, horizontal taut wire, without intermediate standards or supports, and without machinery for the propulsion of the car, which was secured against oscillation by the double wheels rigidly secured

to the hangers, and propelled to and fro by a single push of the hand. The invention had not been anticipated, and was patentable. The Forsyth patent, No. 3,428, for a sliding door provided at its upper edge or top with rollers traversing a suspended bar or rail, has no bearing upon the art of cash-service apparatus. The Chesebrough patent, No. 99,406, for means of rapid transit across rivers by inclined cables from the tops of towers on the opposite sides of the river, and a car running down the inclined cable by gravity; the David Brown patent, No. 165,473, which describes a wire rail suspended between two standards, a car suspended from the rail, and moved backward and forward by an endless rope passing over grooved pulleys; the White patent, No. 221,488, for a double inclined way upon which cars descend by gravity; the Hayden patent, No. 241,008, which was for a modification of the White patent, just mentioned, and was also intended to be for inclined tracks upon which the cars moved by gravity, and was neither designed, adapted, nor used for a horizontal wire upon which cars were to be moved by a single push of the hand; and the White patent, No. 229,783, for means for driving the cars along the rods by propelling devices like cords or belts,—do not anticipate, because each was for a carrier moved upon a different principle from that of the Osgood invention. In regard to the patentability of patent No. 1, I concur with Judge Baker, of the district of Indiana, who said in the case of the present complainant against Herzog (C. C.) 100 Fed. 299: .

"No one before Osgood had conceived the idea that a store-service apparatus consisting of a tautly-stretched wire way, with a car or carrier rigidly attached to wheel hangers having grooved wheels, placed one behind the other on the way, was capable of a successful operation by an impulse or push. This conception was novel in the art, and as an operative mechanism it was first embodied in the Osgood patent."

The apparatus used by the defendants is of two kinds,—one for a cash railway, and the other for a package railway. The wires upon which the cash carriers run are not perfectly horizontal, for the lengths vary from about 20 feet to about 200 feet, and the down grades from the cashier's station to the sales station vary from about 1 foot in 12 feet to about 1 foot in 100 feet. Whether the wires which are of greatest inclination are or are not practically horizontal, it is not necessary to consider, because the defendant's cash-carrier system is a one-wheeled apparatus. The carrier frame is extended in each direction from the wheel parallel with the track, and below it, and "has at each end an upward extension, which extensions are each provided with a notch at the upper end, which notches receive within them the wire of the track. In other words, each end of the track frame is provided with a pair of fingers, or a kind of fork, which embraces the track wire." These two guides check a tendency to oscillation. It is said that they accomplish the same result as the second wheel in regard to oscillation, and they probably do to a certain extent; but they are merely guides which hold the wire, and are not a wheel which supports the carrier, and the invention was too narrow to include a departure from supporting wheels to guiding fingers. The package carriers have two wheels, but it is stipulated that "the length of wire ways vary from about ten feet to about forty-

four feet, and each of the wire ways runs on a down grade from the packing station to the sale station, and these down grades vary from one foot in ten feet to one foot in twenty-two feet." These package carriers run from the packing station to the sale station mainly by the force of gravity. There is no infringement of claim 1 of patent No. 1.

Claim 2 of patent No. 2 was as follows:

"In combination with the wires and supporting bar or ring of a cash-car system, an arresting stop or a spring buffer adapted to receive and hold the car."

The specification says:

"In order to prevent rebounding when the car reaches the terminus of the track, we provide a spring of flat or round metal, which acts as a catch and buffer. The two arms extend above or below the track, and parallel therewith. The ends of the arms are flared outward to receive the forward part of the car, which thus opens the arms and passes between, being firmly clamped and held therein. Thus the force of the shock is broken, and rebounding prevented."

The defendant, instead of the forked buffer, has at each end of the track an enlargement of the track "composed of a coiled wire like a spiral spring, wound around the main track wire, which it loosely encircles, except at the forward end, when it is substantially in contact with the track wire." "As the car comes in, its guide projections (beneath the track wire) bear frictionally against the coiled wire surrounding the main track wire, thus tending to retard the movement of the carrier, and the frictional pressure will increase as the car progresses" until the car is brought to rest. The stop of the patent is a primitive affair, while that of the defendant is neatly and efficiently organized. It may be that the latter stop is an equivalent of the former, but I think that the forked buffer of patent No. 2 was so obvious a mechanical expedient as to be destitute of invention.

The bill is dismissed, with costs.